UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANKIE M. TERRY,

    Plaintiff,

v.                                              Case No.:  2:20-cv-841-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER**

Plaintiff Frankie M. Terry filed a Complaint on October 23, 2020.  (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 27).  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A),

1382c(a)(3)(A); 20 C.F.R. § 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 416.905 - 416.911.

## II.     Procedural History

Plaintiff applied for supplemental security income on April 20, 2018, alleging a disability onset date of January 4, 2000.  (Tr. at 17).[1]  Plaintiff's claim was initially denied on July 25, 2018, and again upon reconsideration on January 14, 2019.  (*Id.*).  On March 14, 2019, Plaintiff filed a written request for hearing, which was held before Administrative Law Judge ("ALJ") Ryan Johannes on December 31, 2019.  (*Id.* at 17, 38-58).  During the hearing, Plaintiff moved to amend the alleged onset date to April 20, 2018, which the ALJ granted in the decision.  (*See id.* at 17).  The ALJ issued an unfavorable decision on January 30, 2020.  (*Id.* at 17-32).  The Appeals Council subsequently denied Plaintiff's request for review on August 19, 2020.  (*Id.* at 1-5).  Plaintiff filed her Complaint in this Court on October 23, 2020, (Doc. 1), and the parties consented to proceed before a United States Magistrate Judge for all purposes, (*see* Docs. 15, 17).  The matter is, therefore, ripe.

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

**III.     Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since April 20, 2018, the application date (20 [C.F.R. §§] 416.971 *et seq.*)." (Tr. at 19).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "cervical degenerative disc disease status post laminectomy; lumbar degenerative disc disease; obesity; lupus; borderline intellectual functioning/cognitive disorder not otherwise specified; and reading disorder (20 [C.F.R. §] 416.920(c))." (*Id.*).  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically

3

equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 416.920(d), 416.925[,] and 416.926)." (*Id.* at 20).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> to perform light work as defined in 20 [C.F.R. §] 416.967(b) except occasionally climb stairs and ramps; never climb ladders and scaffolds; occasional balance or stoop; never kneel, crouch, or crawl; can do sitting or standing alternatively at will provided they are not off work ten percent of the work period; frequently handle and finger; must avoid concentrated exposure to vibration and all unprotected heights; understand, remember, and carry out unskilled work; occasional contact with public, coworkers, and supervisors; and no work on an assembly line or conveyor belt.

(*Id.* at 24). The ALJ also determined that Plaintiff "has no past relevant work (20 [C.F.R. §] 416.965)." (*Id.* at 30).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 [C.F.R. §§] 416.969 and 416.969(a))." (*Id.*). Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform work as an electronics worker, (*Dictionary of Occupational Titles* ("DOT")# 726.687-010) and plastics assembler (DOT# 712.687-010). (*Id.* at 31). For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, since April 20, 2018, the date the application was filed (20 [C.F.R. §] 416.920(g))." (*Id.*).

4

## IV.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

V.     **Analysis**

On appeal, Plaintiff raises one issue. As stated by the parties, the issue is "[w]hether the ALJ properly evaluated [Plaintiff's] symptoms and took them into account in determining her RFC." (Doc. 27 at 9).

More particularly, Plaintiff argues that the ALJ erred in conducting a subjective symptom determination. (*See id.* at 9-13 (citations omitted)). Put differently, Plaintiff asserts that "the ALJ failed to satisfy his obligation under [Social Security Regulation ("SSR")] 16-3p to clearly articulate record-based reasons for the weight given to [Plaintiff's] statements regarding her symptoms." (*Id.* at 11). Plaintiff identifies portions of her testimony, which she contends the ALJ "fail[ed] to even mention," (*id.* (citing Tr. at 44-53)), and she argues that the ALJ failed to adequately explain his reasoning for rejecting the subjective symptom allegations that he considered, (*see id.* at 11-12 (citations omitted)).

Plaintiff also asserts that the ALJ erred by disregarding SSR 16-3p when he based his subjective symptom determination "primarily on the objective medical evidence." (*Id.* at 12 (citing Tr. at 27)). In support, Plaintiff argues that the ALJ's assessment of Plaintiff's activities of daily living was insufficient because the ALJ overlooked that Plaintiff could only complete those activities with help from her sister and daughter. (*Id.* (citing Tr. at 52-53)).

Additionally, Plaintiff claims that "the ALJ's decision fails to adequately address the type, dosage, effectiveness, and side effects of any medication [Plaintiff] takes or has taken to alleviate pain or other symptoms." (*Id.* (quotations omitted)).

6

Specifically, because Plaintiff takes Flexeril and Plaquenil, which are "known" to cause fatigue and headaches, she contends that the ALJ erred by (1) failing to explain his apparent rejection of Plaintiff's alleged medication side effects and (2) characterizing Plaintiff's headaches as "non-severe" based on "a lack of diagnosis." (*Id.* at 12-13 (citing Tr. at 330, 544)).

In response, the Commissioner argues that the ALJ properly evaluated Plaintiff's subjective complaints under the regulations and Eleventh Circuit case law. (*Id.* at 13-19).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine whether it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then she must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations

7

omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

Additionally, SSR 16-3p eliminates the use of the term "credibility" in the sub-regulatory policy. SSR 16-3p, 81 Fed. Reg. 14166, 14171. SSR 16-3p stressed that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but will instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* SSR 16-3p clarifies that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *Id.* at 14170.

The Court finds that the ALJ's subjective symptom evaluation is supported by substantial evidence and the ALJ did not err. Further, the ALJ's opinion, read in

8

context, did not assess Plaintiff's "character or truthfulness."  Consistent with the two-step process for evaluating symptoms, it assessed Plaintiff's subjective complaints and found that they conflicted with the other evidence in the record.  (*See* Tr. at 19-30 (citations omitted)); *see also* SSR 16-3p, 81 Fed. Reg. 14166, 14170-71; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 n.3 (11th Cir. 2018).[2]

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but her statements concerning intensity, persistence, and the limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record for the reasons the ALJ stated in his decision.  (Tr. at 25).

The ALJ summarized Plaintiff's allegations regarding:  (1) the pain in her neck, back, and extremities; (2) the functional limitations from her conditions; (3) her mental limitations; (4) her difficulty performing her activities of daily living independently; and (5) the side effects from her medications.  (*Id.* at 25).  Yet the ALJ noted that this testimony conflicted with:  (1) "a lack of significant medical imaging during the period"; (2) "findings on physical examinations"; (3) findings on

---

[2] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).  While Social Security Rulings are not binding on the Court, they are still afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

mental status examinations"; and (4) "[Plaintiff's] high functioning activities of daily living . . . ." (*Id.* at 25, 27; *see also id.* at 25-29).

As for the "lack of significant medical imaging during the period," the ALJ specifically noted that the medical imaging available in the record consisted of "very remote" findings that showed "generally no more than moderate findings." (*Id.* at 27 (citing Tr. at 360-61, 377-78)). Additionally, the ALJ considered that "[d]uring the period at issue, [Plaintiff's] providers generally did not order any significant medical imaging." (*Id.*). Moreover, the ALJ considered and assessed Plaintiff's June 26, 2018, and September 12, 2019, "[b]loodwork" screenings in determining that the objective evidence of record supported that Plaintiff maintained the ability to perform work consistent with the RFC determination. (*Id.* at 26, 28 (citing Tr. at 541, 571, 585)).

For the "findings on physical examinations," which the ALJ found to contradict Plaintiff's allegations, the ALJ considered the records from Plaintiff's emergency room visits in which Dr. Pita routinely found that Plaintiff was essentially normal physically. (*Id.* at 26-28 (citing Tr. at 409-14, 430-33, 446-51, 486-89, 501-06, 518-23, 587-92)). The ALJ also contrasted Plaintiff's allegations with the "essentially normal" objective examinations findings from Dr. Gagot-Rivera. (*See id.* at 26 (citing Tr. at 543-49)).

With the "findings on mental status examinations," the ALJ examined Dr. Pita's, Dr. Gagot-Rivera's, and ARNP Segev's records, which generally showed "essentially normal" psychiatric findings on objective examination. (*See id.* at 27-28

10

(citing Tr. at 430-33, 446-51, 486-89, 501-06, 518-23, 543-49, 551-68, 589-92)).  The ALJ also accounted for Dr. Visser's consultative psychological examination, despite that it was "remote" in time.  (*Id.* at 28 (citing Tr. at 393-97)).

Finally, as to "[Plaintiff's] high functioning activities of daily living," the ALJ highlighted that Plaintiff testified that she could "perform[] household chores, handl[e] a checking or savings account, grocery shop[], us[e] a cell phone, be[] independent with personal hygiene, and play[] video games."  (*Id.* at 22-23, 25, 27, 29; *see also id.* at 47-50, 52-53, 299).

In sum, after considering Plaintiff's subjective symptoms and the associated medical evidence, the ALJ made a determination, supported by substantial evidence, that Plaintiff's subjective symptom allegations were inconsistent with the evidence of record.  (*See id.* at 25-29 (citations omitted)).  The Court is unpersuaded by Plaintiff's argument that the ALJ failed to adequately explain his reasoning for rejecting Plaintiff's subjective symptom allegations.  (*See* Doc. 27 at 11-12 (citations omitted)).  Rather, the ALJ provided specific examples of inconsistencies between Plaintiff's allegations and the other evidence of record.  (Tr. at 22-29 (citing Tr. at 360-61, 377-78, 409-14, 430-33, 446-51, 486-89, 501-06, 518-23, 541, 543-49, 551-68, 571, 585, 587-92)).

Moreover, to the extent that Plaintiff cites portions of the record that she contends the ALJ overlooked, the Court is not persuaded.  (*See* Doc. 27 at 11-13 (citing Tr. at 27, 44-53, 330, 544)).  For example, with respect to Plaintiff's alleged medication side effects and alleged lupus symptoms, Plaintiff testified as follows:

11

> [ALJ:] Does any of your medication cause you to have any side effects?
>
> [Plaintiff:] Actually, yes. I have one. My depression medicine was affecting with the lupus medicines and it was causing me to have rapid heartbeat.
>
> . . .
>
> [Counsel:] Okay. So tell me what are — I know you described earlier to me what some of the complications you had from [lupus]. So, can you describe to the court?
>
> [Plaintiff:] The weakness, the weight gaining. I am gaining weight like crazy. The hair loss, the eyesight, all these things I have developed since the lupus, medicine and all. I started.
>
> [Counsel:] And when you say weakness do you mean body weakness or do you mean fatigue or both?
>
> [Plaintiff:] Both.
>
> [Counsel:] Do you spend a lot of time napping during the day?
>
> [Plaintiff:] Yes . . . [m]aybe an hour a day.

(Tr. at 46-47, 51).

While Plaintiff asserts that the ALJ failed to adequately explain his reasons for rejecting her testimony about the effects of her lupus, (*see* Doc. 27 at 11), the ALJ directly rebutted Plaintiff's allegations by highlighting that "nothing in [Plaintiff's] bloodwork supports a diagnosis of lupus as it was all negative," (Tr. at 28 (citing Tr. at 545, 549, 587-88)). Thus, the Court finds that the ALJ sufficiently explained why he did not include additional RFC limitations related to Plaintiff's alleged lupus symptoms.

12

Additionally, even though Plaintiff contends that the ALJ failed to adequately explain his consideration of the side effects from Plaintiff's medications, (*see* Doc. 27 at 11-13 ("[Plaintiff's] prescription for Plaquenil would explain her development of daily headaches.") (citations omitted)), a review of the ALJ's decision shows that he expressly discussed that Plaintiff experienced headaches as a side effect of her prior medication, Zoloft, (*see* Tr. at 20 (citations omitted)).  Also, while Plaintiff may be correct that a potential side effect of Plaquenil is headaches, Plaintiff has identified no testimonial or medical evidence suggesting that Plaintiff's reported headaches are a side effect of her current medications.  The Court finds that the ALJ did not err by overlooking whether Plaintiff's Plaquenil caused her headaches given the apparent absence of evidence within the record finding or alleging the same.

As for Plaintiff's argument that the ALJ erred in his assessment of Plaintiff's ability to complete activities of daily living, (Doc. 27 at 12 ("[Plaintiff] is unable to complete these activities without the assistance of her sister or daughter" (citing Tr. at 52-53))), again, the Court is not persuaded.  Rather, Plaintiff routinely testified that she maintained the capability to independently engage in the identified activities of daily living.  (*See* Tr. at 299, 48-50).  The ALJ did not commit a reversible err by failing to explicitly identify that Plaintiff later provided conflicting hearing testimony because inconsistent testimony does not bolster Plaintiff's subjective symptom allegations.  Moreover, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition

13

as a whole." *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted).

Finally, the Court is not persuaded by Plaintiff's contention that the ALJ failed to examine a number of the factors for evaluating Plaintiff's subjective symptom allegations and, instead, "discounted [Plaintiff's] testimony based primarily on the objective medical evidence." (Doc. 27 at 12). As summarized previously, the ALJ thoroughly considered all of the evidence of record in conducting a subjective symptom determination. *See Adams*, 586 F. App'x 531, 533 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole." (quotations omitted)). Here, upon reviewing the record, the Court finds that the ALJ considered Plaintiff's medical imaging history, physical examination findings, mental status examination findings, and activities of daily living, and appropriately found them to contradict Plaintiff's subjective complaints. (*See* Tr. at 22-29 (citations omitted)). The subjective symptom evaluation is the province of the ALJ and this Court declines to disturb it given the substantial supporting evidence in the record cited by the ALJ. *See Foote*, 67 F.3d at 1562.

In sum, the Court finds that the ALJ considered the entire record of evidence, appropriately found it to be inconsistent with Plaintiff's subjective complaints, and provided sufficient explicit reasoning such that the Court could conduct a meaningful review of the ALJ's determination. (*See* Tr. at 22-29); *see also Dyer v. Barnhart*, 395

14

F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole.") (quotations omitted and citing *Foote*, 67 F.3d at 1558). For these reasons, the Court finds that the ALJ's subjective symptom determination is supported by substantial evidence and the ALJ's decision is due to be affirmed.

## VI.     Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's subjective symptom determination was properly completed and is supported by substantial evidence. Accordingly, the Court **ORDERS** that:

1. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).
2. The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 17, 2022.

_____
Mac R. McCoy
United States Magistrate Judge

15

Copies furnished to:

Counsel of Record
Unrepresented Parties

16